John H. Pennock, J.
This is an article 78 proceeding to review a determination of the Commissioner of Education made pursuant to sections 310 and 2217 of the Education Law. In that decision (No. 8131 dated April 21, 1970) the Commissioner dismissed an .appeal from an order. of a District ¡Superintendent of Schools correcting an indefinite and uncertain boundary in accordance with the provisions of subdivision 1 of .section 2215 of the Education Law.
The Board of Education of Central School District No. 1 of the Towns of Ontario, Walworth, Macedón, Marion, Williamson, Wayne County, and Webster and Penfield, Monroe County, New York, moved to intervene and permission was granted by Special Term. The motion of the intervenor-respondent to dismiss on the objection in point of law is granted.
*160 Further, the motion of the respondent Commissioner of Education based upon objections in point of law is granted.
The essential facts are not in dispute. Central School District No. 1 of the Towns of Ontario, Walworth, Macedón, Marion and Williamson, Wayne County, and Webster and Penfield, Monroe County, borders on Lake Ontario. It was formed by the centralization of a number of smaller districts in 1949. The appeal to the Commissioner involved a portion of the northerly boundary of said school district in what was formerly Common School District No. 3 of the Town of Ontario. No precise metes and bounds description of this boundary has been found either in the local records or in those of the Department of Education. A general description of former Common School District No. 3 is annexed to petition herein marked Exhibit C, but it dates from 1843 and is merely a description of the type “ bounded on the north by, bounded on the east by, etc.” It indicates “ District No. 3 is bounded on the North by Lake Ontario ”.
Rochester Cas and Electric Corporation has constructed an intake tunnel in the bed of Lake Ontario. A dispute arose between Central School District No. 1 and Rochester Cas and Electric Corporation as to whether or not this facility was taxable property located within Central School District No. 1.
The District Superintendent of Schools for the sole Supervisory District of Wayne County made an order pursuant to subdivision 1 of section 2215 of the Education Law which amended the record of the boundary to clearly indicate that the northern boundary of the district is the boundary line under Lake Ontario between the United States and Canada. The Commissioner sustained the District Superintendent’s order.
Under section 310 of the Education Law, the decision of the Commissioner of Education “ shall be final and conclusive, and not subject to question or review in any place or court whatever ”. The Court of Appeals has made it clear that the review of the Commissioner’s decision under section 310 is far narrower than the normal review of administrative determinations. (Board of Educ. v. Allen, 6 N Y 2d 127.)
It is clear from the petition and also from the record before the Commissioner that the order of the District Superintendent was within his discretionary powers under subdivision 1 of section 2215 of the Education Law and was a reasonable exercise of those powers.
The Education Law sets forth two different procedures with respect to changes in school district boundaries.
*161 The procedure involved in this case is succinctly stated as follows:
“ General powers and duties of district superintendent. A district superintendent of schools shall have power and it shall be his duty: 1. To inquire from time to time into and ascertain whether the boundaries of the school districts within his supervisory district are definitely and plainly described in the records of the office of the proper town clerk; to cause to be made and filed in the education department a record of such boundaries; and in case the record of the boundaries of any school district shall be found indefinite or defective, or if the same shall be in dispute, then to cause the same to be amended or an amended record of. the boundaries to be made and filed in the office of the proper town clerk and in the education department.”
The other procedure is set forth in section 1507 et seq. of the Education Law. A comparison of these sections and proceedings shows that where a boundary is indefinite or defective or in dispute the District Superintendent may correct the description under subdivision 1 of section 2215. On the other hand, an amendment of a boundary between two school districts may be made by a District Superintendent but only after obtaining the consent of both districts affected by the amendment as provided in section 1507 or, if one or both districts refuse such consent, by following the procedure set forth in sections 1508 and 1509 of the Education Law. These procedures call for the review of the proposed boundary change by the supervisors and town clerks of all of the towns to be affected by the amendment.
In short, if property is to be taken from one district and placed in another, the boards of both districts and the town officials are interested parties and such a boundary amendment may be made only in accordance with the provisions of section 1506 et seq. However, where the question is merely the interpretation of an indefinite or confusing boundary line or the precise location of a line described by metes and bounds, the consultation with the districts and town officials is not specifically required by law and the District Superintendent is empowered to decide the issue in the reasonable exercise of his discretion.
This interpretation of these sections of the Education Law has been considered and sustained by both the Second and Third Departments of the Appellate Division. (Matter of West Gilgo Beach Assn. v. McGuire, 13 A D 2d 1031; Matter of Board of Educ. v. Nyquist, 28 A D 2d 936.) The decision of the Second Department in the West Gilgo Beach case is at all fours with the *162 instant proceeding. The latter case in this Department, which involved the assessment of property owned by the Long Island Lighting Company in tidelands off Long Island, is in no way inconsistent with the West Qilgo Beach case. These .two cases, read together, clearly show the distinction between the two proceedings involving school district boundaries and the rules stated by the courts in those cases have been correctly applied by the District Superintendent and by the Commissioner. A brief discussion of the two cases will make this clear.
The Long Island Lighting Company case involved a boundary line between two school districts which had been established by metes and bounds and which defined the area in question as the “ high water mark on Hog Island Channel”. This description w,as not indefinite or uncertain, and although the actual location of the' boundary line had changed over the years as a result of accretion, it was nevertheless capable of being located at any particular time. The District Superintendent, in that case, had attempted to divide the tax assessment of property owned by Long Island Lighting Company between the two .adjoining districts by a boundary alteration order purportedly under subdivision 1 of section 2215. In fact, however, the order amended the district boundary and transferred land from one school district to the other. The Commissioner held that this could only be done by following the procedure set forth in section 1506 et seq. and his determination was sustained by the Supreme Court and this court.
However, in the instant case, as in the West Qilgo Beach case, the question involves not á dispute between two school districts or the transfer of land from one district to another but off-shore land. The West Qilgo Beach case involved off-shore islands •off Long Island, and this proceeding involves property under Lake Ontario. Such property according to petitioner is not included in any school district in the State and is therefore exempt from taxation. The same argument was made by the petitioner in the West Qilgo Beach case. The court found (p. 1032) that it was the intention of the law “ that all real property within the State shall be in .some school district ’ ’. It noted that only one school district was involved and held that under those circumstances the District Superintendent of Schools had the power under subdivision 1 of section 2215 to amend the description of the boundary so as to include the property in dispute in the appropriate school district.
In one respect, respondent’s position in this proceeding is even stronger than that of the respondents in the West Qilgo Beach case. The available description of the boundary in that *163 ease did not appear to include the area in dispute. Even so the court held that the District Superintendent had the power to add it to the district. However, in this case the vague general description of the northern boundary of this school district as “hounded on the north by Lake Ontario ” is on its face indefinite and capable of various interpretations. Consequently, the order of the District Superintendent redefining the boundary is not an addition of property to the school district but is merely a carrying out of the intention of the Legislature and of the school commissioners from the beginning.
The petition is dismissed as a matter of law. The Commissioner’s decision is not arbitrary or capricious. Thus it is-determined after a review -of the petition, answer and record, before the court that the proceedings are dismissed as a matter of law and on the merits.